IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARLEZ WRIGHT, #614571, | ) |
| Plaintiff, | ) ) ) |
| v. | ) NO. 3:24-cv-00330 |
| WARDEN VANTELL, et al., | ) ) JUDGE CAMPBELL |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Marlez Wright, a state prisoner confined at the Trousdale Turner Correctional Center (TTCC), filed a pro se civil rights Complaint under 42 U.S.C. § 1983 (Doc. No. 1) and an application for leave to proceed in forma pauperis (IFP). (Doc. No. 2). Plaintiff also filed a Motion to Produce Security Footage Video. (Doc. No. 3.)

This case is before the Court for ruling on Plaintiff's IFP application and Motion, and for initial review of the Complaint under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

### I. PAUPER STATUS

A prisoner bringing a civil action may be permitted to proceed as a pauper, without prepaying the filing fee. 28 U.S.C. § 1915(a). Because it appears from Plaintiff's financial affidavit and other documentation that he lacks the funds to pay the entire filing fee, his IFP application (Doc. No. 2) is **GRANTED** and a $350 filing fee is **ASSESSED**.[1] The fee will be collected in installments as described below.

---

[1] Prisoners bringing civil lawsuits or appeals are "required to pay the full amount of a filing fee," 28 U.S.C. § 1915(b)(1), either in a lump sum at the time of filing or in installments over time via an assessment against the prisoner's inmate trust account. Where the prisoner is granted pauper status and allowed to pay

The warden of the facility in which Plaintiff is currently housed, as custodian of his trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility in which Plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## II. INITIAL REVIEW

**A. Legal Standard**

In cases filed by prisoners, the Court must conduct an initial screening and dismiss the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). Review under the same criteria is also authorized under 28 U.S.C. § 1915(e)(2) when the prisoner proceeds IFP.

---

in installments, the fee is $350. *See* 28 U.S.C. § 1914(a)–(b) & Dist. Ct. Misc. Fee Schedule, provision 14 (eff. Dec. 1, 2023).

To determine whether the Complaint states a claim upon which relief may be granted, the Court reviews for whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The court must afford the pro se Complaint a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to the plaintiff. *Inner City*, *supra*.

Plaintiff filed the Complaint under Section 1983, which authorizes a federal action against any person who, "under color of state law, deprives [another] person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted); 42 U.S.C. § 1983. The Complaint must therefore plausibly allege (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

**B. Allegations and Claims**

Plaintiff sues three Defendants, all state actors: TTCC Warden Vantell, Correctional Officer Hathaway, and Grievance Hearing Officer Christie. He claims that Hathaway and Christie violated his constitutional rights by their conduct on January 22, 2024, when they allowed inmates from other units to enter Plaintiff's unit, Whiskey Charlie (WC), during "chow call" in order "to

3

assault, stab, and injure the plaintiff" and three other inmates in WC unit (inmates Keildrick, Vester, and Parham). (Doc. No. 1 at 8, 10.) Plaintiff alleges that Hathaway and Christie failed to intervene to protect him, allowed the assaults to continue, and did not attempt to call for assistance from other TTCC staff. (*Id.* at 7–9.) Rather, these Defendants "sprayed those [inmates] that were trying to prevent further hurt, harm, or danger" instead of the inmates "who were attempting to assault/stab this plaintiff." (*Id.* at 9.) Plaintiff further alleges that Defendant Hathaway "was making inconsiderate, inappropriate comments" during the attack, stating "she was glad that inmate Keildrick was getting his just due." (*Id.* at 10.)

Plaintiff alleges that TTCC is understaffed (*id.* at 9) and that its existing staff is not properly trained. (*Id.* at 11.) In particular, he alleges that Warden Vantell "fail[ed] to properly train the defendants Hathaway and Christie." (*Id.* at 14.) He seeks injunctive and declaratory relief, as well as an award of damages to compensate him for "emotional distress," "mental anguish," "physical restraint," and "civil rights violations." (*Id.* at 4, 16.)

## C. Analysis

It has long been established that "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). An Eighth Amendment violation may occur when prison guards fail to protect one inmate from an attack by another inmate. *See Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990). However, "not all injuries suffered by an inmate at the hands of another prisoner" result in liability for the prison officials tasked with protecting their safety. *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998). To state an Eighth Amendment claim in this context, the inmate must show that a prison official

4

Case 3:24-cv-00330   Document 6   Filed 02/21/25   Page 4 of 7 PageID #: 43

was deliberately indifferent "to a substantial risk of serious harm" to the inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004).

To establish deliberate indifference, the inmate must show "that the official was subjectively aware of the risk" and "disregard[ed] that risk by failing to take reasonable measures to abate it." *Greene*, 361 F.3d at 294 (quoting *Farmer*, 511 U.S. at 847). As particularly relevant to the facts alleged in this case, "[t]he Sixth Circuit has held that where an officer provides an opportunity for attack and does nothing or stands idly by while an attack takes place without intervening, he violates the attacked prisoner's constitutional rights." *Brazelton v. Coffee Cnty.*, No. 4:17-cv-00036, 2018 WL 3999822, at *3 (E.D. Tenn. Aug. 21, 2018) (citing *Carico v. Benton, Ireland, and Stovall*, 68 F. App'x 632, 639 (6th Cir. 2003)). *See also Blake v. Israel Sexton, Sergeant, New York City Police Dep't*, No. 12 CIV. 7245 (ER), 2016 WL 1241525, at *5 (S.D.N.Y. Mar. 24, 2016) (allowing deliberate indifference claim to proceed "where defendants are alleged to have failed to intervene to stop an attack they have actually witnessed").

Here, Plaintiff alleges that Defendants Hathaway and Christie allowed inmates from other units to enter Plaintiff's unit at mealtime, in order that the other inmates might carry out an attack on Plaintiff and three other residents of WC unit. He alleges that Hathaway and Christie not only failed to intervene after the attacks began, but they also contributed to the attacks by using chemical spray on inmates who were trying to quell the violence rather than on the attackers. Presuming these allegations true as the Court must at this initial stage, they are sufficient to state a colorable Eighth Amendment claim of deliberate indifference to safety against Defendants Hathaway and Christie in their individual capacities. This claim against these Defendants survives initial review and will proceed for further development.

As to Warden Vantell, the only allegation against him is that he and his corporate employer, CoreCivic,[2] failed to ensure that Hathaway and Christie were properly trained. But "a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). And, to the extent that a liberal construction of the Complaint supports a finding of Plaintiff's intention to pursue relief from CoreCivic, conclusory allegations of corporate indifference to proper training are not sufficient to support a plausible claim under Section 1983. *See Johnson v. City of Chicago*, 711 F. Supp. 1465, 1472 (N.D. Ill. 1989) (stating that § 1983 "plaintiff must also plead facts to support his general allegations that it is indeed the policy of the [entity] to inadequately train its officers") (citing *Strauss v. City of Chicago*, 760 F.2d 765, 769 (7th Cir. 1985) (conclusory allegation that entity has a policy of knowingly acquiescing in individual officer's brutality is insufficient to establish liability)). The Complaint in this case contains zero factual allegations from which the Court could reasonably infer that Warden Vantell encouraged or participated in the decision to allow the attack on Plaintiff and his fellows in WC unit, or that Defendants' corporate employer had a policy of inadequately training its employees. Accordingly, the failure-to-train claim against Vantell and/or CoreCivic will not be allowed to proceed.

### III. CONCLUSION

As explained above, the Complaint states a nonfrivolous claim against Defendants Hathaway and Christie. Accordingly, the Clerk is **INSTRUCTED** to send Plaintiff a service

---

[2] "Trousdale Turner Correctional Center (TTCC) is a medium security facility managed by CoreCivic, a private corrections management firm." https://www.tn.gov/correction/state-prisons/state-prison-list/trousdale-turner-correctional-center.html (last visited Feb. 20, 2025).

packet (blank summons and USM 285 form) for each of these Defendants. Plaintiff **MUST** complete the service packets and return them to the Clerk's Office within **30 DAYS** of the date of this Order. Upon return of the completed service packet, **PROCESS SHALL ISSUE**.

Defendant Vantell is **DISMISSED** from this action.

Plaintiff's Motion to Produce Security Footage Video (Doc. No. 3) is **DENIED** as premature. After service of process is accomplished, Plaintiff may request the production of such video evidence in discovery and, if need be, he may thereafter seek to compel such production by filing a motion that comports with applicable procedural rules.

The Court's determination that the Complaint states colorable claims for purposes of this initial screening does not preclude the Court from dismissing any claim at any time for the reasons set forth in 28 U.S.C. § 1915(e)(2), nor does it preclude any Defendant from filing a motion to dismiss any claim under Federal Rule of Civil Procedure 12.

This action is **REFERRED** to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE

7

Case 3:24-cv-00330   Document 6   Filed 02/21/25   Page 7 of 7 PageID #: 46